May it please the court and counsel, good afternoon. My name is Stephen Bierman. I am here on behalf of the appellants who are secured lenders who made loans to certain special purpose entities that are not defendants in this action for the purpose of those entities participating in the acquisition or development of assisted living facilities. The SEC, the plaintiff, has made no allegation that the secured lenders engaged or involved in any wrongdoing. Nonetheless, the preliminary injunction that the district court entered restrains the secured lenders in very, very meaningful ways from enforcing their contractual rights. The injunction that Judge Hogan issued should be reversed for two reasons, and I will address them in turn. The first reason is that the court lacked the authority to issue the injunction because Judge Hogan should have recused himself in response to the motion that the appellants made asking for recusal. Second, in any event, even if he properly decided to recuse the motion, which he did not, he in any event abused his discretion in granting the injunction in a couple of ways that I will lay out. Now, Judge Hogan lacked authority to issue the injunction. The appellants, the secured lenders, made a motion under 28 U.S.C. section 455, both A and B1, for recusal. The SEC states in its appellees' brief specifically that it does not respond to the appellants' arguments about recusal. It's only Defendant Harder, who according to the SEC is the chief architect of the alleged fraud that defends Judge Hogan here. Under section 455A, a judge is required to disqualify himself in any proceeding in which his impartiality might reasonably be questioned. It's an objective standard and basically. And I think we're all agreed with the status of the law, which is a judge is not required to recuse just because the judge has engaged in settlement negotiations in the particular case, correct? In certain circumstances, that's correct. However, Your Honor, the case. Right. I mean, it's not a blanket rule. It's not a blanket rule. In other words, it's not a prohibition that would require automatic recusal. We're all agreed. Not in all situations. That's correct, Your Honor. So here you've listed in your brief, if I understand it, your central argument is he said he wanted a global settlement, and therefore you think he had improper contacts outside the record? The central argument actually precedes that in time, Your Honor, if I may. And it's really the point which I was about to lead to. On pages 14 and 15 of our reply brief, we catalog in bullet points an array of activities and expressions of views that Judge Hogan was involved in that we think reveal his partiality and his knowledge of disputed evidentiary facts. Here's the key one I would like to focus the panel on. Because the case law says that knowledge gained about these disputed evidentiary facts has to be extrajudicial, and because the cases dealing with the appearance of partiality are along similar lines, this is critical. Extrajudicial, indeed prejudicial here, Judge Hogan met on December 19 of last year with Clyde Hamstreet, who's one of the named relief defendants in what later became the SEC's complaint. He's the chief restructuring officer of these entities through which the fraud was perpetrated, according to the SEC, met with Hamstreet and Hamstreet's counsel and possibly others to discuss strategy in a proposed bankruptcy proceeding and motion that Mr. Harder, the core wrongdoer, according to the SEC, would file. This is not just extrajudicial, this is prejudicial. There's nothing judicially going on at the time. And we know what happened at this meeting because a time entry of one of Mr. Hamstreet's attorneys for December 19 states that the meeting concerned, quote, course of action with respect to Section 105 injunction. In other words, they discussed strategy, a course of action. When Mr. Harder filed for bankruptcy a couple weeks later, December 31, Mr. Harder also filed an adversary proceeding in which he sought under Section 105 of the Bankruptcy Code at a preliminary injunction against the lenders being able to bring lawsuits to enforce their contractual rights under their loans. He also filed at the same time a motion to have Judge Brown, the bankruptcy judge, order a mediation. And in that application, rather, Mr. Harder stated that Judge Hogan had, quote, worked to develop an understanding of the issues in this complex case by meeting with Chief Restructuring Officer Clyde Hamstreet and others. It was in that context, with this extrajudicial personal knowledge of strategy and Mr. Harder's objectives and facts that were discussed in the context of that, that Judge Hogan proceeded to be appointed as the mediator to conduct a mediation to hammer out a stipulation in the bankruptcy court that effectuated the purposes that Mr. Harder had. And then, lo and behold, several weeks later, when the SEC filed its enforcement action in the district court, and the case was initially assigned to Magistrate Judge Coffin, who could not hear it because the SEC coupled its filing of the complaint with a TRO application, and a magistrate judge cannot hear an injunction application unless all parties consent, another judge had to hear the case. Who was in the courthouse that day? Judge Hogan. Well, there are only two district judges in Eugene. Pardon me? There are only two district judges in Eugene. I understand that. But the case may have been in the central district. I don't mean to be dramatic about it. I understand that. But California. Under the circumstances, Your Honor, it's – No, but let's – if you get to the meat of the argument. Sure. Certainly he had these discussions and mediation, and he had knowledge of the case. And the question is, then, we know that there is no case that says you can't do that. So what's the difference in this case? The difference is – He's not meeting with – he's not favoring particularly one party or another. He's – he may be favoring one remedy or another. Well, Your Honor – But I've never heard a judge who said – I mean, your basic complaint is that he said he wanted a global settlement. And I've never heard a judge say, I only want a partial piecemeal settlement that doesn't settle all the claims. I just have never heard that. A global settlement doesn't mean anything to me except an aspiration that he wants the case to be resolved. Well, that's not – And, in fact, the record shows that since that time he has taken a number of – a number of entities in your client's situation have petitioned to be relieved, and he's granted that. Right? Well, our clients have not petitioned to be relieved. And rather, in a couple instances – No, I understand that. But I'm asking about there are certain specific banks who have asked to be relieved from the – come out from under the aegis of the injunction, and he's granted relief. I think there were several stipulated orders that were submitted to that effect. But coming back to Your Honor's premise, because I really do think it's critical – Because you're saying it's quite a serious thing to say this judge is guilty of misconduct. We can't just say, well, he expressed a view that he'd like to settle the case, and, therefore, he should be thrown off the case. It is a serious thing. It is a serious thing, Your Honor. And it's equally serious that the public and litigants should be able to have confidence in the system and not have judges who have evidence of partiality or the appearance of partiality. So coming to your observation, Your Honor, in this case, the judge learned of these disputed evidentiary facts in the context of a strategy discussion with private citizens before there was any litigation. And then he proceeded to act upon that. Judge Brown in the bankruptcy court ultimately denied the motion for a preliminary injunction. And it's only later in the SEC action, which, as Your Honor points out, was assigned under the circumstances to Judge Hogan, that Judge Hogan's able to effectuate the relief that he first discussed with the defendant who became defendants in the case in the pre-litigation meeting. This is very, very different from cases in which a sitting judge was engaged in mediation with the consent of the parties and then continued to preside in the case, or where a sitting judge learned about facts in a judicial setting and then continued with the case or related case. It's different from those cases in which a sitting judge engaged in ex parte settlement discussions, but where there was a transcript of the meeting and that was available and it showed the judge did not express any partiality. It's much more like the cases where the judge met privately with certain consultants and the contents couldn't be tested. But it's in effect, Your Honor, like no case, because we have not found a case in which the judge met as a private matter with persons who eventually became litigants to discuss a strategy that they could put into effect once they filed the case and to take steps every step along the way to effectuate that strategy, ending up with the preliminary injunction hearing on March 10th, at which an agreed proposed preliminary injunction order was presented by the SEC and the named alleged wrongdoing defendants. And when counsel for the secured lenders said at that hearing, we've never seen this before right now. Could we have time to read it, Your Honor? Could we have time to put in a submission, Your Honor? Your Honor, can you adjourn this session so that we can respond appropriately? The judge declined to grant that. When you take all of these circumstances together, candidly and with all respect under the circumstances, this is not like any of the cases in which, for the good of mediation, for the good of resolutions, for the good of coming together and resolving disputes, a judge can act in a mediation and then proceed to hear the case. This is an extraordinary case of partiality. Well, it's not a case of you're a non-party. At least you're a non-party to this. It's not a case where we're involving partiality to one named party or another named party. In essence, it's a, if you will, if you're going to call it a strategy, it's an idea about how to resolve global disputes. Now, there's one theory, which is you file 100 different bankruptcies perhaps, all of which I suspect would be venued in the District of Oregon because the LLCs are formed there. But arguments could be made that they could be filed in different states, different circuits. And they took a different approach here, said we're going to bring everything under one roof with the SEC file. Well, respectfully, it's not just a matter of strategy. But I'm just saying one can have legitimate differences about whether or not one course of action should be taken. The difference that I see, and I'm only expressing this so you can respond to it, is that in the partiality case, you see where somebody is saying here's a party and I'm going to benefit the party. We're going to have an ex parte communication. And I'm going to take action to benefit that particular party as opposed to trying to say, okay, we've got a big problem that needs to be mediated in our district or solved in our district and talking about how to solve it. So that's my rambling. You can respond to it. No, I don't think they're ramblings. I think they're points worth my considering. And I will, Your Honor, and I'll end on this because I'd like to move on to the other part of the argument. But the cases strongly say that even the appearance of partiality must be avoided. And here we have a circumstance that is so different from any of the reported cases that go back and forth in the briefing here between the appellants and Mr. Harder. This case is different because the judge met before there was even a case and discussed with pre-litigants a strategy that they could put into effect to effectuate their objectives. Counsel, let me ask you one question. On a standard of review as to whether this district judge should recuse himself, he generally would have an abuse of discretion in that, would he not? Generally, that's right, Your Honor. And in fact, in this particular case, you filed two motions for disqualification under two different or asked for disqualification under two different statutes. And on one of the statutes, the district judge was allowed to make the determination in the first place, and he did. And in the other statute, it went to the magistrate judge, and he also made a discretionary determination. He did, correct? That is correct. The magistrate judge determined the 144 branch of the motion. Right. And so at this point, what you're really saying, as I understand the argument and that's the worry that I have, are you really saying that on an abuse of discretion standard, in a situation where one is determining whether the whole of this, which it seems to me that you're really mixing in this now into what we really have in front of us, I'm not even sure this is an issue which should come up at this particular point in time, or whether this is an issue that is not appropriate for appeal at this particular time. But even meshing it in, which is what I suppose you're trying to do, you're saying it's so obvious that this is an abuse that I'm to suggest that. Your Honor, respectfully, I do believe under the case law it is obvious that it's an abuse. To address very quickly, because I do want to move to the other subject. We'll give you time. Go ahead. To address your observation that you're not sure whether this issue belongs here at this time, we urge, and we think it is entirely reasonable, that under this Court's decision in Meredith v. Oregon and related cases, that it's appropriate for the Court to take supplemental or pendent jurisdiction over the recusal decision of Judge Hogan because it is necessary to do so to make meaningful review of the injunction itself. Like the case of Meredith, if the Court did not have authority to begin with to proceed to hear and then decide the preliminary injunction motion, and the Court determines that based on the recusal arguments we're making, then my worry is that what the ultimate of your argument is that in every case where somebody comes up with some idea, valid or not, that a judge is not able to sit on any particular case, that automatically we will in each time have an argument made to us that they can't rule, and therefore they're up every time in these kind of situations, which I don't find any other cases that suggest such a situation. Well, I'm not suggesting, Your Honor, that as an ordinary matter, of course, that pendent or supplemental appellate jurisdiction be exercised. But in this circumstance, applying Meredith to these facts, we think it's appropriate. A couple other quick questions. Sure. I know you want to get to your other argument. What do we do with Chief Judge Aiken's order? Well. Chief Judge Aiken not only decided the 144 question, but she referenced 255. And she affirmed not only affirmed what the magistrate judge did, but essentially said there's no persuasive evidence of bias to warrant recusal. Well, respectfully, we disagree with the result reached by Judge Aiken. It suffers from the same defect, I think, that we've been discussing here, and that is it doesn't take into account the extrajudicial contacts that Judge Hogan had, which the cases say he just plain can't have. So that wasn't really addressed in that order. And I don't mean to suggest that every judge is wrong about everything. I'm trying to be very respectful about this, but we think that result was wrong. No, you made a serious argument. I think Judge Smith does raise an important point for us globally, which is that if we exercise jurisdiction over this kind of motion and say the district court erred in a case, then we have a powerful procedural tool to put in. And I know this is a serious motion you're making. It's a serious case, a lot of consequences. But we get a lot of these kind of recusal motions by the hundreds that have absolutely no merit whatsoever. That it's just an attempt to raise an issue in a case. And that's a serious point. I understand your observation, Your Honor. I think the exercise of pendant or supplemental jurisdiction here is so appropriate because, candidly, you're not going to find another case like this. I know people get up here all the time and say my case is different, my case is unusual. This is extraordinary. I'd like to move on to the other ground for reversal here, and that is that the judge abused his discretion in two respects in granting the injunction. And I'll be brief about this. I think the paper's laid out in great detail. First, he made no findings whatsoever that would support an injunction. Rule 52A is clear, it's unequivocal. A judge has to make findings of fact and conclusions of law on an interlocutory injunction motion. Here the judge made no findings. We don't know what was his rationale in determining that there was a likelihood of future violations. What was his rationale in appointing a receiver? What was his rationale in allowing Mr. Hamsky to stay in place? What we do know is this on the record. At the TRO hearing, Judge Hogan stated very clearly, quote, I find that there has not been a significant showing of likelihood of future securities violations or dissipations of commingling of assets. That's the record, page 358. And he also said that as to the appointment of a receiver, it would add, quote, a layer that is not necessary as far as the going forward situation, close quote. Those are the only findings, if you will, that we have on the record. No further evidence was submitted between then and the preliminary injunction hearing. No further submissions on the merits. And if anything, the findings such as they were that he made defeat the injunction. And under Rule 52, it's an abuse of discretion to have made no findings or conclusions of law accompanying the injunction. And then just briefly with the Court's indulgence, because I do know my time is running, but we had, I hope, a useful dialogue about the recusal issue. Secondly, even if injunctive relief against the defendants is warranted, the Court still abuses discretion by entering broad ancillary relief directed against the non-party lenders. The SEC wants to give you the impression that the discretion the Court has in this regard is unfettered and irrespective of the facts. The law is quite to the contrary. Under this Court's precedent, the Wenke decision, the Hickey decision, the Ross decision, and others, it's extraordinary to enjoin a non-party. And it comes up and is allowed only in these kind of narrow circumstances, where the non-party is an empty vessel through which the wrongdoing defendants funneled their ill-gotten gains, or where the non-party, that's the Ross case, where the non-party is dominated or controlled by the wrongdoing defendants, that's the Hickey case, or in the Wenke case, which kind of started it all, where an ancillary restraint on the non-party is necessary to enable an appointed receiver to carry out his assigned responsibilities. And here's the key, to manage and control receivership assets. Unlike the Wenke case, and for that matter, the New York District Court case that you see back and forth in the briefs, which is Byers or it's referred to as Wextrust. Unlike those kind of cases, here the receivership appointment is narrow. The SEC wants to convey the impression that this is like all other receivership cases. This, again, is like no other receivership case, because very specifically, the receivership is precluded, the receiver, rather, I should say, is precluded from managing or controlling any of the receivership entities or assets. He's supposed to gather information about what happened. He's supposed to search out what commingling of assets occurred, which is the main complaint here. He's supposed to consider certain limited third-party claims and certain discouragement claims. He specifically is not accorded responsibility for controlling or managing assets. That's left, according to the injunction order, to the chief restructuring officer who was already in place. That's the fellow, by the way, with whom Judge Hogan met the first time he got involved in this at all. The SEC made clear in the proceedings below that this chief restructuring officer is not a receiver and he's not a fiduciary. And here's the crux of it. And then I'll be done, I think, Your Honor. In these ancillary relief cases, when an otherwise innocent non-party is to be restrained from exercising rights that it has contractually, in this case, secured loans through mortgages, in order to do that, it has to be in aid of allowing the receiver to carry out his receivership functions. Here, because the receiver does not control or manage the bank accounts or these special-purpose entities, there is nothing to be gained by enjoining the lenders from suing those special-purpose entities, because that's outside the receiver's province. And indeed, the assets that the lenders are going to pursue, if freed to do so, are substantially real property by its nature, isn't subject to commingling or something that the receiver will be chasing after. And I'll leave you with just this. In the Wenke case, this Court admonished that even in the context of a traditional SEC receivership where the receiver is granted full powers, and here's the quote, quote, a blanket stay should not be used to prejudice the rights which innocent and legitimate creditors may have against receivership entities, close quote. I think under these circumstances, irrespective of the recusal issue that we discussed at length, Judge Hogan abused his discretion by not making findings, if anything, making findings that defeat the injunction, and then granting extraordinary, unprecedented ancillary relief. I'd like to thank you for allowing me to go a bit over my time. It's an important case. We want to make sure everybody has a chance. I appreciate that. The only thing I'd want to note before the SEC, and I understand the receivers counsel may be speaking as well, is that there is pending before the merits panel a motion that the appellants have made to strike the receiver's brief and to strike portions of the SEC brief. The papers describe that, but in a sentence it's because the materials in the receiver's brief concern an interim report he filed six weeks after the injunction and concerning other events after the injunction. They weren't part of the record before Judge Hogan was considered. We have the motion before us, and we'll take it under consideration. Again, thank you. And if you would indulge me, a very, very brief possibly about rebuttal. Thank you again. And we have a time allocation, I understand. Judge, are you about that? Yes. So how much time are you going to take? Fourteen minutes. All right. Would you put 14 minutes on the clock just so you have a separate? Hold on a second. That will give you an accurate time so you don't have to ask me. Thank you. All right. Very good. May it please the Court, David Licitsa for the Appellee Securities and Exchange Commission. And you have to move your mic closer to you so we can hear you, especially Judge Fletcher, who's very good. Is that good? Yes. David Licitsa for the Appellee Securities and Exchange Commission. The Commission addresses two issues regarding the preliminary injunction. First, the discretion to appoint a receiver and manager in equitable receivership proceedings. And second, the district court's discretion to bar any lawsuits or actions against the receivership entities or assets. However, regarding the recusal issue, I did want to say that the gentleman who's going to speak is a counsel for the receiver. The issue of recusal was briefed by Appellee Harder. So I don't want you to think that just because I'm going to address these, you know, two issues, that someone else is coming up to discuss the recusal issue. If there's anything you wanted to talk to me about the recusal issue, as they pointed out, we did not take a position on this. But we have a position? Well, the position is that we didn't take one. The reason why we didn't take one is because we didn't take one below. And the reason why we didn't take one below is that it's actually been looked at. We saw this as an important issue, but three judges looked at it and reviewed it as a position. And all three concluded that there's nothing there. Certainly the discretionary standard that you'd look at, those three decisions, and beyond what's contained in them, we do not need to take a position. Okay. So with regard to the merits or issues other than the position. So you still don't take a position? I say it's a position without a position. I think we understand you're in no position. You're in no position. That's right. The district court here initiated equitable receivership proceedings to deal with a massive fraud involving over 200 entities where investors were told that they were purchasing interest in specific retirement homes when, in fact, SunWest operated as a single scheme that co-mingled investor funds and generated false returns, including by paying off old investors with funds raised from new investors. The district court itself has in-rem jurisdiction over these entities and has afforded broad powers and wide discretion to administer its receivership. With regard to receivers, these broad powers include the power to appoint one or more receivers and divide that labor between receiver and manager roles. So to cut to the chase, what do the co-mingled assets have to do with the specific and separate real property interests owned by these various entities? Well, the assets are going to be sold as a whole, as a unity. The value of the unity and the value of the underlying properties, if you were to take an individual property, it may appear that that property is worth money and it's above water. However, because the value of that land also includes the value of the business on that land, if it looks and appears as if this was a successful property entity, in fact, that money came from co-mingled money from other investors. And so when you were valuing it and selling it, you'd be receiving a benefit from that sale that actually belongs in the pockets of others. That's what happens if you do this on an individual basis. The reason why you need to have a global dealing or, you know, that gets me in trouble. The reason why you need to have all the entities combined is because of the co-mingling, because if there was an individual foreclosure action, there would be claims brought in that action. That, as a cost matter, would be very difficult to coordinate. They would then want to be able to sue and bring claims against other parties that were then in the receivership. So explain to me the stipulations to allow certain entities to leave the aegis of the receivership and proceed individually. Those are properties that are underwater. The value of the lien exceeds the market value. There's no possible benefit for those sales to investors. For those properties that are doing well or are above water, the value of the receivership estate is maximized when it's possibly sold or continued to operate as a whole. This was a pretty decent business for a while, and it can be again. There's a distribution plan that contemplates either selling it as a whole or continuing the successful aspects as an ongoing concern, giving adequate protection to secured lenders. They maintain their liens throughout this process. So by selling it as a whole, the distribution plan would treat this as a single entity. That's the reality of the situation here because the funds were commingled. Does that? Go ahead. Right. So what the stay does and the benefit of the stay is it allows the sorting out of these processes, the winnowing out of those assets that have no value, and restoring a larger pie as a going concern to a greater number of investors. Now, the distribution plan itself is the subject. To use a bankruptcy term, and I know we're not in bankruptcy, how are you assuring adequate protection for the secured lenders whose properties, businesses are above water? There's a few things to say about that. First, steps have been taken by the receiver, and he can address that, to ensure that the secured lenders are protected. That's in his report. Mostly siloed income from the entities to make sure that cash collateral is not abused and allowing some sales where the assets are underwater. In other words, they allowed these sales. The second point is that the secured lenders were allowed to seek leave. If they could demonstrate prejudice to their rights, then they could have gone to the district court and said, here's why we need this released. And if the district court refused to release it, then that could be on review. But no such permission was requested. It is a bit extraordinary, though, in a receivership case, to essentially import 105 of the bankruptcy code into the receivership. In other words, 105 powers in the bankruptcy code to allow injunctions against third parties as part of relief. But it is a stretch, to say the least. And I realize that there are some cases that talk about that, but to have such an expansion of the injunctive powers in a receivership. Wouldn't you agree? I think the receivership itself gives the district court broad powers, and those powers have been exercised in the past in frauds. The universal financial case is simply on point and excellent for us. Also the Winkie case. This Court has done that and recognized that in crafting, when you're dealing with a massive fraud with 200 entities, the receivership process that involves these types of injunctions is actually routine. And this is an ideal case for the use of receivership to unwind a complex fraud. This Court has also done so. I think Judge Fletcher has one. Counsel, there is a distinction from the Winkie case. I guess I was the author of the Winkie case, so I remember it at least in part. There, there was danger of continuing fraud. I don't think that's an aspect of this case. Do you agree? There's no danger of continuing fraud as to the secured lenders. However, in universal financial, this Court made clear that there's broader interests at stake than just the likelihood of future violations. There's the protection of the receivership res, the protection of defrauded investors, and considerations of judicial economy. And universal financial basically crossed that bridge and said that for the sake of the receivership process, we in courts do this kind of injunction all the time. I think that although each case, you know, could be different, the exercising of that power and the use of the receivership process is routine in capital consultants, in Ross, in Hardy. I mean, to unwind this kind of fraud, you have to prevent parties and non-parties from exercising these rights and tearing apart the estate when the estate is worth more as a whole and when these individual actions would significantly increase the costs of administering the estate. You know, it's interesting, though, when you look at the structure of the receivership, what you're essentially advocating is a bankruptcy type of procedure without the bankruptcy protections for the secured creditors. In other words, it's kind of the protections are built in on an ad hoc basis. As Judge Fletcher said in previous cases, we've looked at prevention of fraud. This is purely an exercise of financial control and liquidating an estate in the most from the viewpoint of one entity in the most effective manner, but in the viewpoint of another entity, maybe not so. The bankruptcy code, for example, in contrast, has some very specific protections. Here, if I understand what you're suggesting, is that we're operating in essentially an ad hoc basis? Well, the first point is that no one is suggesting putting all of these entities into bankruptcy. That was never on the table. As far as putting individual entities in bankruptcy, it runs into the same problems I mentioned before. Lincoln Thrift allows a district court to choose between putting things into bankruptcy and putting things into the receivership. The second point is that the receivership here has tremendous advantages over this hypothetical bankruptcy, which someone could have sought leave to perhaps file, but no one did as far as being able to marshal the funds, pursue third-party claims, and provide a prorouted distribution or some type of distribution to defrauded investors. This type of procedure, like I said, is used by the court often. The last point on this is that the distribution plan actually contemplates going through a bankruptcy process. If the entities, once the entities are reorganized as a unity, which in reality they are, it then actually puts it into, contemplates putting it into bankruptcy proceedings, where all of these supposed advantages would be there. It's a Chapter 11 reorganization. Let me ask a different question, put it a different way, for example. Let's say that one of the secured entities wanted out of the injunction. On what basis could they argue that they ought to be relieved of the injunction? I believe in this. In the bankruptcy code, for example, it would be pretty straightforward. There are rules that apply in which and when there's equity in the property, not equity in the property, and so forth. What rules apply here? I think that as far as rules, we believe, and this Court has mentioned, that this ad hoc flexibility could be viewed as an advantage in these processes. Yes to you, but the question is to all parties. Also, any time you wanted to lift a stay, the Wanky and Universal Financial cases say that would lifting preserve the status quo, which if the properties are underwater and there's no value that's possibly, you know, commingled that belongs to other investors, then it would. Second is the timing within the receivership. You know, in this case, they moved, secured lenders moved within a week to try to attack the injunction when there was no ability to sort out the commingling to get a grasp of these entities. And the last factor is the merit of the underlying claim. Now, these were looked at in a lifting the stay context in both Wanky and Universal Financial, and Universal Financial, this Court said, for secured lenders, we're not going to lift the stay. And that's the situation here. Right. Except the additional fact here is that we don't have any findings. That was going to be my question. How do I – you've given me a good – you've given me great emphasis as to why it would be for the district court to do what they had to do, but I can't find any of that in the record. So if I'm going to review it on an incorrect legal standard or ruling on clearly erroneous finding of fact, where do I find it? Well, the – with regard to appointment of the receiver, the Commission made a substantial showing about the probable existence of fraud, which under United Financial allows the receivership process to continue or begin, initiate it. And as well as in giving the receiver's powers, the Court listed all the needs and powers for the receiver and manager. And also, with the March 2nd, as far as the injunction, there were findings that the blanket stay is necessary to preserve the status quo, prevent further distribution of property and assets, prevent the encumbrance or disposal of the assets, and protect investors. That's in the March 2nd order, and those are sufficient findings we submit for this Court to do that. There's also – Those are conclusions. Those are conclusions, I would say, yes. But where are the findings that support the conclusions, the factual findings? Well, those, I think, are – in my mind, those are factual findings. There's also no genuine dispute about any of the facts. It's not as if there wasn't fraud here or that there isn't commingling. The district court found commingling. And also, the district court continues in its findings of facts recently on October 2nd, entered additional findings of facts and conclusion of law that establishes Now, this Court should look at things like that because an injunction is a kind of continuing relief. And under U.S. v. Swift, and as a recognized exception to looking at materials outside the official record, when injunctions, you look at these things. This whole process has been continuing. Well, what you're really arguing, however, counsel, is that what – when I have an injunction which comes up, which injunctive relief by a district court is pretty serious relief, goes further than any legal remedy. You can't have the legal remedy. You ought to be going to injunctive relief. And now we've got a district court getting involved in all these transactions, doing what it wants to do, and I've got no reasoning in its decision of why. None. I've got to go back through the record, as you tried to do, and come up with some reason that they did what they did. And what I found, frankly, and I'm just trying to lay this out as a devil's advocate, what I found, a lot of conclusions of law, but nothing that says why. And, in fact, when you came in for the first TRO, he said no. And then when you went out and had your little discussions on your own and you all came back and said this is what we want, he says yes. And then he says language which counsel has adequately said, which is contrary to what you're really doing here. And now we have a preliminary injunction without any further finding except good cause. Well, if you look at all of the findings, as far as appointment of a receiver, United Financial says you don't need very much at all. And as far as the injunction, there's a lot of findings about what the value of the injunction is. There's really, if you were to try to say, look, we're worried about what happened here, the meaningful appellate review is the reason why you want findings. I understand that going back to the record you haven't found that. Right. Coincidentally, that's why we're here. Right. Right. I haven't found that meaningful. The problem is this, is that we're supposed to review the findings and conclusions. And I don't see the findings. Now, you can go through the record and you could say, okay, I think this is what he meant. And maybe this is what he didn't mean. But it makes it a very difficult appellate review. So you can't just say, all right, it's for the, it meets all the, it's not acceptable for the district court just to do a blanket recitation of the boilerplate language, and especially in a case of this size, and say, all right, well, that's the end of it. Well, there's two last things that I'll say, then, because I understand what you're saying. First is I would suggest looking at the October 2 findings of fact, which are far more descriptive and go to some length in their discussions. The October? The October 2, 2009. This is not in. This is after we got the injunction. That's correct. The other thing is that if you were to remand and just want them to, just want the district judge to paper up his conclusions, you'd probably get something for you, much like the October 2, 2009 findings. The fact that the entire receivership process and where we've been as far as thousands of hours of mediation to get to a distribution plan that restores value to all investors would basically where we'd be ending up today. It wouldn't protect these secured lenders in any way. You'd be satisfied with all the arguments I'm making and which those that are made in the October 2 findings of fact. Sure, but we'd have a record to do it from. I think with this record, we still have that. I think you're allowed to look at the October 2, 2009 record because it's an injunction. And those cases and that discussion is cited in our response to the motion to strike, that because an injunction is a continuing form of relief, it's an exception under FRAP that you are well established by the Golan case and the In re Adam case that you can look to developments and see how the injunction is working to see if it still makes sense. And if you do that, you will see that it is working and does make sense. And you will actually find findings of fact on October 2 if you're not satisfied with what was already on the record. I think Judge Fletcher had a question. Oh, I'm sorry. I think he ought to give the co-counsel a chance to finish out here. He's four minutes over time. Oh, I'm very sorry. If that's it, thank you. Our questions took you over. Thank you. I see six minutes has been put on the clock. So I appreciate the indulgence, Your Honor. May it please the Court and counsel, I'm Kenneth Hennessey of Allen Matkins Counsel for the Receiver, Michael A. Grassmuck. And I appreciate the time to address Your Honor. Your Honors, with respect to some of the issues that have been raised on appeal that come into sharper focus only from the perspective of somebody who has been dealing with this as the process unfolds. And I think one of the critical components that has been missing from the discussion today is the character of the investors that the receivership order was intended to protect. We have over 1,200 investors who put in money into this real estate funding scheme in exchange for interest in real property, tenant and common interest. Those interests are in properties that are subject to then loans to lenders who, you know, loan money to acquire the property or to continue the operation of the property. Those TIC investors, most of them, made their investments through 1031 exchanges, which means they sold other property to try to invest in a new investment here. And upon foreclosure, they not only would lose the value of their investment in the real property, they would also suffer adverse tax consequences as a result of the loss of their 1031 exchange, or they could potentially. And the receiver has spent, along with tax counsel for the CRO, along with the tenants and common committee, hundreds of hours dealing with that specific issue. And, in fact, the lenders have raised the argument that the receiver order was entered without any protection for the lender's rights. We have, the receiver has and the CRO have stipulated to relief from the injunction for lenders, even in situations where we knew that tenant and common investors would face the loss of that investment and adverse tax consequences. And we have taken extraordinary measures to create what's called a lifeboat so they could transfer their interest before that foreclosure happens. So that's the backdrop and the context that I think is important to understand why the receivership order was prepared the way it was, why the injunction against foreclosure was necessary to fulfill the very purpose of the order appointing the receiver. The purpose was to preserve the value of the receivership estate and mitigate against the loss of defrauded investors. And so with that context in mind, I think it's easier to see why this injunction against non-parties who have their rights affected without basically having a say at the injunction hearing was appropriate in this circumstance. If the very fact of their investment and the character of that investment required that foreclosures be stayed or else there would be very little purpose and absolutely no protection for those investors going forward. Now, my colleague, Mr. Lysitsky, mentioned that a distribution plan has been approved as implementation of the receivership order. That did occur in October 2, 2009. There are many pages of factual findings behind that approval of that distribution plan. And to the extent the factual findings were lacking, that you could consider them lacking in connection with the injunction order, we think it is appropriate that the Court entertain those findings because they are based now on, at that point, seven months' worth of investigation and continuing work by the receiver, his accountants, and other parties in the case and evidence presented to the judge throughout that process that substantiated what was put before the Court to issue the injunction in the first place. And that injunction has been in effect with respect to secured lenders. There have been dozens of orders granting relief to the secured lenders, to certain secured lenders, to allow foreclosure to proceed. It's not a small matter. I mean, we have 22 lenders appealing. We have dozens of lenders who have gone through the process to obtain relief and go ahead with foreclosure against their property. But I gather the precondition for it is, in your view, you would oppose any secured lender obtaining relief if the secured lender can't show that there's no equity in the property, right? Well, and it's interesting you bring up that question, Your Honor, because before you mentioned, well, in bankruptcy, you know what the rules are. Well, as a result of the distribution plan being approved, one of the provisions of that plan is that the stay as to foreclosures by lenders is coterminous with the application of Bankruptcy Code Section 362A, because one of the consequences of the distribution plan was for the unitary enterprise that was recognized under the distribution plan was now consolidated into certain existing bankruptcy cases, certain existing Chapter 11 cases, that would give rise to the automatic stay. So that very system of providing adequate protection and that very system of analyzing whether stay relief is appropriate is, as we stand here today, in effect. I guess my worry, and I guess we're going there quickly, but my worry is that what you're suggesting to me, which it seems to me that the secured creditors ought to have some protection in this particular matter, where you're suggesting that the case law is broad enough to bring a bankruptcy. Really, what you're really saying is to bring a bankruptcy proceeding for all of these corporations outside of bankruptcy, treat them all like this is a bankruptcy. We do what we do in bankruptcy, and I hope we will do that in this receivership proceeding. And what you're really saying, then, to me is district court ought to have the power to organize a bankruptcy outside of the bankruptcy court and make it happen. And nobody should be able to say that's an abuse of discretion. Why have a bankruptcy statute at all? That's the argument. Well, and, Your Honor, I won't take that as my argument. I understand that. I understand your position. What was effectuated through the distribution plan was something that's familiar to many distribution plans in SEC receivership matters, where there is, you know, commingling among a number of different entities. That's a part of the fraud that's been ongoing, that the receivership was meant to remedy. And dealing with that commingling, the best way to make sure that everyone is treated equitably from the investor standpoint, is to equitably consolidate the assets so that they are portioned on a prorated basis to investors, so that you don't have the fortunate few who got their investment back out of a certain profitable element of the business, and others get nothing. And that was what was done under the distribution plan here. We have consolidation of the assets. Now, some of the entities are in a Chapter 11 that was pending at the time the receivership order was entered. And those pending bankruptcy cases were used sort of as a pour-in from the consolidated receivership entity assets to reorganize the unitary enterprise through that Chapter 11 process. So it wasn't the receivership order wasn't designed necessarily as, you know, an ad hoc bankruptcy. We ended up proceeding through a bankruptcy process that's now ongoing. In fact, the disclosure statement and Chapter 11 plan were filed on Monday. That process is ongoing. But the initial purpose of the injunction and the receivership order were to prevent the dissipation of the value and to mitigate the loss of the investors, to prevent foreclosures, while the receiver investigated the allegations made by the SEC and determined whether or not there was a distribution plan that could be formulated that would protect those investors and distribute the greatest value to them. And when we talk about the receiver was, you know, a receiver with limited powers, well, the receiver was granted the power under the injunction order, under the receiver order, to formulate the distribution plan, which is the end all, be all. I think we understand the general concept and the merit of it from the investor point of view. But that's not the question in front of us. The question is essentially vis-a-vis these third parties who have secured interests that aren't and ended in property that's not commingled, what their rights are and whether they're adequately protected in this process. And, you know, that does take us into some perhaps different territory here. Especially when we're talking about something of this magnitude. And I understand your point, Your Honor, and I appreciate it. The bankruptcy provides the protection. It has a mechanism. Everybody is, you know, there are ways of dealing with competing interests. This is a very investor-centric proposal. And I'm not saying there's anything wrong with that, but it does give one pause when you have to say, well, you do have to consider the rights of secured lenders as well. Well, and, Your Honor, I'll just make this very brief. I know I'm past my time. But when you say there's been no commingling with respect to the real property, again, that goes back to the character of the investors that have been defrauded in this case. And they put their money forward. Well, what I meant was this, is that as far as the secured lenders are concerned, there's not a commingling problem. They have a lien on a specific piece of real property. That happens to be owned. That happens to be owned on a fractional basis. There's an argument that there might be some equity in the property that could be commingled with other assets. Well, and also, Your Honor, that the fractionalized ownership interests were purchased with funds that were then commingled throughout the enterprise. And so that the very ownership of the real property that's subject to the lien is, you know, correct, but is a product of commingling. Well, it may have been purchased with commingling funds, but certainly the loans themselves are not commingled, if you take my meaning. In other words, the rights of the secured creditors are not owned by any entity in which there's commingled funds. If I'm probably confusing you, I'm probably not speaking very artfully, but, I mean, the rights of the secured creditors are completely independent of all this enterprise. Well, they're not being accused of any wrongdoing in connection with the enterprise. I agree with you there. They're innocent lenders who lent money, and they took a secured position on the property, and they want to exercise their rights. I understand the greater good and the greater scheme from the investor point of view, but I think that's what we're talking about. Well, part of the factual background in our case, Your Honor, is that some of those lenders who received payment to keep them current, to maintain certain facilities, received payments based on commingling. So when we say the real property isn't commingled, there's more to that. I think we understand your position. Thank you, Your Honor. Thank you. And I take it you don't have a position on the recusal either? Your Honor, the receiver did not take a position on the recusal. I just could give you an update. I noticed on the dockets in the Staten Chapter 11 bankruptcy case that I guess there had been another motion for recusal that Judge Aiken said, for the reasons set forth in my April order, I'm not going to order a recusal. Let me ask you a question. Are the bankruptcies all venued in Oregon? Do we know? Well, as I understand it, and again, we're getting past the record here, but as I understand it, Judge Hogan has withdrawn the reference in a number of bankruptcies in Oregon and has brought them unto himself. I don't know that all the bankruptcies ever filed a connection with us were in Oregon. Okay. I'll be very, very brief, and I appreciate the indulgence to let me get up again. First of all, Judge Fletcher, you're exactly right in remembering the Wanky decision. There was, in fact, in that decision, a concern raised lest the non-party suits that were at issue there might be collusive or fraudulent, and that might be disruptive of that estate, but that has nothing to do with this case here. Secondly, to the observations that both Judge Thomas and Judge Smith made or raised questions about, I think you're absolutely right. There is no protection for the secured lenders in this preliminary injunction order. These are all the burdens of, in effect, a Section 362A automatic stay under the bankruptcy code with none of the countervailing protections and rules and precedent that's applicable there, and the notion that the lenders have the right under the preliminary injunction to come in and ask for those properties that are not under the order, because I think Your Honor was exactly right to make that observation, to somehow think that these various constituencies are going to agree and not oppose an application for a chance to bring a lawsuit is fanciful. The distribution order is a burden. Yes, Your Honor. We have reference made to this plan which is now in place which supposedly gives protection to the secured lenders. Can we look at that? Well, Your Honor, respectfully, it's not in this appeal. It was not issued at the time of, obviously, the preliminary injunction order. I will tell you the distribution order, I understand, was entered on or about October 2. It is the subject of an appeal, a notice of appeal that the secured lenders have filed in this court and sought a stay in connection with that. That stay motion was denied by two judges. The distribution plan is not really before the court. I will tell you, since Your Honor and Your Honors have engaged in some dialogue with other counsel about it, that it's phenomenally wrong under the law. It basically merges together into a fictional entity, all these various separate entities, and lumps into one pot essentially the rights of the secured lenders who made individual loans, individual contracts with individual special purpose entities. It effectuates a substantive consolidation of those entities, and for a whole host of reasons that, whether it's this panel or some panel we'll be hearing about at an appropriate time, it's just wrong, but I don't think it's really before us on the preliminary injunction order. And the last observation I'll make is I think all three of the panel have made observations or comments about the lack of findings here. Two things quickly about that. The counsel said that the October 2 findings or observations by Judge Hogan can be imported into the October 10 preliminary injunction order. As discussed previously, if he said anything on that day, it was that injunctive relief did not lie here. But there is law, which we cited in that reply brief, which makes clear that that temporary restraining order ends, and it's the obligation of the court to enter findings and conclusions of law on the PI order. And the very last thing about findings I'll say is this. This is not a case where the judge overlooked dotting a few I's or crossing a few T's and where remand for further findings might be an appropriate solution. This injunction is so fundamentally flawed, in particular in connection with the ancillary relief against the secured lenders and the imposition of all the burdens of a bankruptcy and none of the benefits. For the reasons Your Honors have been discussing with counsel, and I won't repeat it, that this is not a case that can be fixed with a remand for further findings. This injunction must be reversed and vacated. Thank you. Kennedy. Yeah. One quick question before you sit down. And this is more of a practical question. It has nothing to do – well, the legal issues are certainly separate from some of the practical considerations. But if the receiver can't provide you with a mechanism for adequate protection, why isn't it a better solution for all of your clients to go through this process and try to liquidate the properties in a way that will make your clients whole and avoid the expense of all the different foreclosure actions, potentially all the different bankruptcies and so forth? Because it's not a better solution. It's a terrible solution. Why is that? It's a terrible solution to – if I understand we're talking about the same thing. We're just talking about practicalities here. I'm not – it doesn't make any difference for our decision. But I guess I'm trying to reach out to see – because this is a large case, a large number of cases, and I understand completely Judge Hogan's desire to try to get this managed in a way that will avoid duplicate litigation and so forth. This is a liquidation, in effect, in a receivership that doesn't control or manage the receivership entities without any of the counterbalancing considerations that would be present in a bankruptcy proceeding and a bankruptcy court. And where this is heading under this distribution order actually is to lump together, as a result of essentially a fiction, the rights of individuals. I stand for a lot of lenders here, but they're individual lenders. And their solution is to make individual claims to assert their individual rights. And the only opportunity afforded in the preliminary injunction, which is what we're talking about here today, is to come to the court to seek modification. In the context of everything that we've been discussing over this long argument, the lenders have no confidence that in properties that have some value, in instances that are not underwater, that they would reach agreement with any of these constituencies who have been steadfastly against them, or that Judge Hogan would grant such relief. And while Your Honor is appropriately asking about practicalities, we are here today under the law, and the lenders candidly didn't have to go make those piecemeal applications. This injunction was wrong when entered for all the reasons we've talked about, and today is my chance to stand up and tell you why. So thank you very much. Well, thank you all for your arguments today, and we appreciate your briefing. This obviously is a very important case to everyone. We'll see what we can do as quickly as possible, and we appreciate you coming here today to argue. Thank you for all of us for your time today. Thank you.
judges: Fletcher B. , Thomas, Smith M.